# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**LARRY TREASTER,**

      **Plaintiff,**

      **v.**                           **Case No.  05-2061-JWL**

**HEALTHSOUTH CORPORATION d/b/a**
**MID-AMERICA REHABILITATION**
**HOSPITAL and DANIEL R. WILSON, M.D.,**

      **Defendants.**

_____

## MEMORANDUM AND ORDER

This is a medical negligence case arising from a fall plaintiff Larry Treaster suffered while he was a patient at defendant HealthSouth Corporation d/b/a Mid-America Rehabilitation Hospital.  Defendant Daniel R. Wilson, M.D., was plaintiff's treating physician as well as the hospital's medical director at the time of the fall.  This matter is currently before the court on plaintiff's motion for leave to amend the pretrial order to assert a punitive damage claim against the hospital (doc. #102).  For the reasons explained below, this motion is denied.

Plaintiff's request to assert a punitive damage claim is based on apparent alterations on an "Acute Medical/Surgical Restraint Monitoring & Interventions Flow Sheet" for two entries made at approximately the date and time plaintiff sustained the fall from which this lawsuit arises.  The hospital staff charted entries on these forms every hour while plaintiff

was hospitalized.  For each entry in the days and hours before the fall, the hospital's nurses charted "AD" (meaning plaintiff's restraints were "adequate") and "C" (meaning plaintiff was "calm").  On the entry at the time plaintiff fell at about 4:00 p.m. on February 8, 2003, an "I" (meaning "inadequate") was written over the "A" and an "R" (meaning "restless") was written over the "C."[1]  Plaintiff contends that this evidence indicates a falsification of medical records and/or intentional spoliation of evidence.

The pretrial order has been entered in this case, and therefore it supersedes the parties' pleadings and controls the subsequent course of the case.  Fed. R. Civ. P. 16(e); *Tyler v. City of Manhattan*, 118 F.3d 1400, 1403 (10th Cir. 1997).  Rule 16(e) of the Federal Rules of Civil Procedure provides that "[t]he order following a final pretrial conference shall be modified only to prevent manifest injustice."  The party seeking modification of the pretrial order bears the burden of demonstrating manifest injustice.  *Davey v. Lockheed Martin Corp.*, 301 F.3d 1204, 1208 (10th Cir. 2003); *Koch v. Koch Indus.*, 203 F.3d 1202, 1222 (10th Cir. 2002).  Relevant factors the court should consider in evaluating whether the amendment should be allowed include: (1) prejudice or surprise to the nonmoving party; (2) the nonmoving party's ability to cure any prejudice; (3) the extent to which including the new issue will disrupt the orderly and efficient trial of the case; and (4) bad faith by the moving party.  *Koch*, 203 F.3d at 1222.  Another factor is whether the moving party acted in a timely manner.  *Id.* at 1223.

---

[1] Or, it could be that the that the "A" was written over the "I" and the "C" was written over the "R."

Addressing these factors in the order in which they most logically apply to the facts and circumstances of this case, the court first notes that plaintiff did not act in a timely manner in seeking to assert the punitive damage claim.  The nurse who signed the Flow Sheet, Stacie Blackwell, was deposed on January 4, 2006.  At Ms. Blackwell's deposition, plaintiff's counsel specifically asked her about the two entries.  Consequently, plaintiff was aware of the evidentiary basis for the amendment more than seven months before filing the current motion to amend on July 18, 2006.  *See, e.g.*, *Davey*, 301 F.3d at 1211 (holding motion to amend pretrial order was untimely where motion was filed two months after recent Supreme Court decision upon which amendment was based).

Plaintiff's purported explanation to the contrary is so dubious that it arguably rises to the level of bad faith.  Plaintiff contends that the belatedness of the proposed amendment is attributable to the fact that plaintiff was not in a position to assert the punitive damage claim until after taking the deposition of the hospital's nursing expert, Darla R. Ura.  Significantly, however, plaintiff has not directed the court's attention to any testimony from Ms. Ura's deposition indicating that these two edited entries somehow give rise to a punitive damage claim.  Therefore, it is unclear to the court what Ms. Ura may have said in her deposition that made this evidence more significant than it was previously thought to be.  Additionally, the court is mindful that plaintiff had the opportunity to retain his own experts.  Those experts could have, but apparently did not, opine that the two entries were so significant that they warrant punitive damages.  Most importantly, though, even if the court were to accept plaintiff's suggestion that the basis for a punitive damage claim was not apparent until Ms.

3

Ura's deposition, the record reflects that the late date of that deposition was solely attributable to plaintiff's own delay in conducting discovery.  The original scheduling order set a discovery deadline of April 1, 2006, and a dispositive motion deadline of April 28, 2006.  (Scheduling Order (doc. #27), ¶¶ 2(b), 3(b), at 4, 7.)  Plaintiff sought three extensions of the scheduling order deadlines relating to experts.  Two of those requests were granted. The third was granted in part and denied in part, with the magistrate judge noting that granting the requested extension would have resulted in the deadlines for experts being extended past the dispositive motion deadline.  (Order (doc. #74), at 2.)  Consequently, the magistrate judge set an April 15, 2006, deadline for defendants' experts to be deposed. Apparently plaintiff still had not deposed defendant's experts at the time of the pretrial conference on April 18, 2006, because the pretrial order notes that all discovery was to have been completed by April 15, 2006; that discovery was incomplete in that defendants' experts had not yet been deposed, plaintiff sought to take the depositions of two fact witnesses and plaintiff was in the process of scheduling a time to photograph and inspect the hospital; and the pretrial order set a new discovery deadline of June 1, 2006.  (Pretrial Order (doc. #90), ¶ XIII, at 13.)  Even then, plaintiff did not meet the June 1, 2006, discovery deadline. Instead, three weeks later on June 21, 2006, plaintiff filed a notice of taking Ms. Ura's deposition on June 26, 2006.  This was more than three months after the hospital filed its designation of Ms. Ura as its expert witness on March 13, 2006.  All of these considerations undercut plaintiff's asserted justification for the delay so significantly that they lead the court

4

to suspect that plaintiff may be acting in bad faith by attempting to assert the claim so belatedly.

"[T]he timing of the motion in relation to commencement of trial is an important element in analyzing whether the amendment would cause prejudice or surprise." *Davey*, 301 F.3d at 1210-11. This case is set to proceed on the court's September 2006 trial docket. This lawsuit was filed in February of 2005 and the current motion was not filed until more than sixteen months later on July 18, 2006. By that time, discovery was complete and the dispositive motion deadline had passed. This motion was the first time plaintiff raised the issue of asserting a punitive damages claim. Thus, the court certainly believes plaintiff's attempt to inject the issue of punitive damages into this lawsuit at such a late date can fairly be characterized as a "surprise."

"Closely related to the prejudice and surprise factor is whether the opposing party ha[s] the ability to cure any prejudice or surprise caused by the amendment." *Id.* at 1211. The hospital contends that plaintiff's proposed punitive damage claim is frivolous and potentially inflammatory. Plaintiff has not provided the court with the information necessary to perform even a rough assessment of whether the proposed punitive damage claim might have any merit. Although the hospital argued that allowing plaintiff to assert a punitive damage claim would be futile, plaintiff still did not identify the legal theory upon which the proposed punitive damage claim is based. Instead, plaintiff has referenced in broad brush terms various legal theories—such as that the hospital willfully and wantonly disregarded his rights, willfully breached a fiduciary duty owed to him, intentionally violated a statutory duty owed to him, and violated their ethical duties—without attempting to explain how the

5

evidence relates to any of those theories so as to support a punitive damage claim. Plaintiff's failure to provide such an explanation leads the court to believe that the claim may be tenuous. Certainly, it heightens the court's concerns about the need to provide the hospital with an opportunity to cure the potential prejudice and/or surprise created by the amendment, particularly on such a potentially inflammatory issue. This case has already proceeded through its discovery, pretrial, and dispositive motions phases. By the time plaintiff filed the motion, discovery was closed. The court had already held the final pretrial conference and had entered the pretrial order nearly two months earlier on May 24, 2006. Defendants' motions for summary judgment and partial summary judgment were at issue, and the court issued its ruling on those motions only a week later on July 25, 2006. If the court were to allow the amendment now there would not be enough time to allow the parties to conduct discovery and to allow the hospital to seek summary judgment on this claim before trial. The court certainly recognizes that it could continue the trial date, but the court has a busy trial calendar and sees no valid justification for rearranging the trial date of this case where plaintiff has offered no reasonable excuse for what appears to have been a substantial delay in seeking to assert the punitive damage claim. Indeed, it appears plaintiff may be seeking to gain a tactical advantage on an issue that could be prejudicial to the hospital at trial. Thus, the court believes that allowing the amendment would unfairly affect the hospital's ability to defend against the motion.

The extent to which including the issue of punitive damages would disrupt the orderly and efficient trial of this case is unclear. But, determining the degree of disruption is not

particularly important here because, in any event, plaintiff has not provided the court with any justification from which the court could find that it should allow the amendment to prevent manifest injustice. To recap, plaintiff substantially delayed in seeking leave to assert a punitive damage claim for a period of more than seven months after learning the evidentiary basis for the claim and more than two months after the pretrial order was entered. Plaintiff has not offered an adequate explanation for the delay, but instead asserts a purported justification that is so weak it borders on a showing of bad faith. And, the hospital will be unduly prejudiced by the inability to attempt to defend this inflammatory claim on its merits before trial, particularly because the claim appears to be tenuous given plaintiff's failure to explain (despite the opportunity to do so) how the evidence supporting the claim relates to any specific legal theory. Because plaintiff has failed to meet his burden of demonstrating that the amendment is necessary to prevent manifest injustice, then, the motion is denied.

**IT IS THEREFORE ORDERED BY THE COURT** that plaintiff's Motion for Leave to Assert Claim for Punitive Damages Out of Time (doc. #102) is denied.

**IT IS SO ORDERED** this 18th day of August, 2006.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge