**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

**LARRY TREASTER,**

**Plaintiff,**

**v.** **Case No. 05-2061-JWL**

**HEALTHSOUTH CORPORATION d/b/a MID-AMERICA REHABILITATION HOSPITAL and DANIEL R. WILSON, M.D.,**

**Defendants.**

---

# MEMORANDUM AND ORDER

This is a medical negligence case arising from a fall plaintiff Larry Treaster suffered while he was a patient at defendant HealthSouth Corporation d/b/a Mid-America Rehabilitation Hospital. Defendant Daniel R. Wilson, M.D., was plaintiff's treating physician as well as the hospital's medical director at the time of the fall. Plaintiff settled his claims against the hospital shortly before trial, then proceeded to trial on his claims against Dr. Wilson. The jury returned a verdict in favor of Dr. Wilson and the court entered judgment accordingly. This matter comes before the court on plaintiff's Motion for New Trial (doc. #182). In this motion, plaintiff contends (1) that the verdict was against the weight of the evidence, and (2) that the court erred in overruling plaintiff's challenges for cause. Finding both arguments to be without merit, plaintiff's motion is denied.

*1.     Sufficiency of the Evidence*

A motion for a new trial made on the grounds that the jury's verdict is against the weight of the evidence is committed to the sound discretion of the trial court. *Veile v. Martinson*, 258 F.3d 1180, 1188 (10th Cir. 2001). The "inquiry focuses on whether the verdict is clearly, decidedly or overwhelmingly against the weight of the evidence." *Id.* at 1188 (quotation omitted). The evidence is viewed in the light most favorable to the non-moving party. *Macsenti v. Becker*, 237 F.3d 1223, 1235 (10th Cir. 2001). The court must bear in mind that "determining the weight to be given to the testimony, drawing inferences from the facts established, resolving conflicts in the evidence, and reaching ultimate conclusions of fact" are functions within the sole province of the jury. *Veile*, 258 F.3d at 1190-91 (quotation omitted).

Here, plaintiff contends that the evidence was overwhelming that Dr. Wilson breached the standard of care by failing to adequately ensure plaintiff's safety. He contends that the opinions of Dr. Wilson's retained expert, Sandra Barrett, M.D., were premised upon the incorrect factual assumption that plaintiff was not physically capable of climbing over the side rails of his bed. The court disagrees with this assessment of Dr. Barrett's testimony. Dr. Barrett was clearly aware that the impetus for the changes in safety precautions ordered by Dr. Wilson on February 6, 2003, was the fact that plaintiff had been found out of bed on that day. More importantly, however, there was an abundance of evidence presented in this case from multiple sources—Dr. Schaeffer, Dr. Barrett, and Dr. Wilson himself—from which the

jury could have reasonably determined that Dr. Wilson's care and treatment of plaintiff was in accordance with the standard of care. Additionally, a variety of other evidence beyond the opinions of the experts could have impacted the jury's determination that Dr. Wilson was not at fault, such as how federal regulations dealing with the use of restraints may have impacted the appropriate medical decision, the hospital's nurses' role in providing information to Dr. Wilson and reacting to changes in plaintiff's condition, and/or the fact that Dr. Wilson was not on duty the day the fall occurred. While a verdict for plaintiff would also have been well within the evidence, the court certainly cannot say that the jury's determination that Dr. Wilson was not at fault was clearly, decidedly, or overwhelmingly against the weight of the evidence.

*2.     Plaintiff's Challenges for Cause as to Juror Nos. 2 and 14*

A refusal to strike a juror for cause is committed to the discretion of the district court. *Vasey v. Martin Marietta Corp.*, 29 F.3d 1460, 1467 (10th Cir. 1994). "Generally, a court must grant a challenge for cause if the prospective juror's actual prejudice or bias is shown." *Id.* Impermissible bias exists if the juror had such a fixed opinion that he or she could not judge impartially. *Hale v. Gibson*, 227 F.3d 1298, 1319 (10th Cir. 2000). Jurors are sufficiently impartial if they can set aside any preconceived opinions regarding the outcome of the case and render a verdict based on the evidence presented in court. *Goss v. Nelson*, 439 F.3d 621, 627 (10th Cir. 2006); *see also Robinson v. Missouri Pac. R.R. Co.*, 16 F.3d 1083, 1091 (10th Cir. 1994) (finding the district court did not abuse its discretion by refusing

to excuse juror for cause in light of evidence that juror could set aside prior impressions and render verdict based on evidence presented in court).

Plaintiff contends that Juror No. 2, Roger Hunt, and Juror No. 14, John Buehler, equivocated on their ability to be fair and impartial. The court disagrees because both testified that, notwithstanding their personal experiences and opinions concerning tort law, they could render a verdict based on the evidence presented at trial and the law as instructed by the court. Mr. Hunt testified that he was formerly employed with a real estate property management firm which was responsible for keeping roads clean and free of ice. Some claims wound up in lawsuits where he was involved in the defense of the case. When the court inquired of him whether he could return a verdict in favor of the plaintiff if he believed such a verdict was warranted by the evidence and the law, he responded, "I think I could." Likewise, in response to the court's inquiry concerning whether he could bring back a reasonable damage award for the plaintiff, he responded, "I think so." Finally, the court asked him whether he thought he could give the evidence the appropriate evaluation, and he responded, "Well, I think I could, yes." Mr. Hunt also expressed a general belief in favor of tort reform, but he testified that he did not think that would taint his view of the evidence in the case. He also testified that Dr. Wilson would not have an unfair advantage against plaintiff if he sat as a juror in this case. The court rejected plaintiff's challenge for cause, explaining that when Mr. Hunt's responses were to the effect that, "I think I can do it," that was as much as a person should be expected to have to say to avoid being disqualified for

cause. As the court explained, Mr. Hunt did not demonstrate any indicia of lack of candor; he did not hold anything back; he was candid about saying he had concerns about tort reform and everything else. He simply was an honest man in saying, in essence, as the court put it at the time, "I think I can, but here's my life experience; you decide whether you think you want me on this case or not." That is tantamount to a statement that qualifies him as being fair and impartial. *See Miller v. Francis*, 269 F.3d 609, 618-19 (6th Cir. 2001) (noting venire members commonly couch their responses to questions concerning bias in terms of "I think" and such language cannot necessarily be construed as equivocation but rather must be viewed in context with other statements made by the juror during voir dire); *see also, e.g.*, *United States v. Forte*, 65 Fed. Appx. 508, 2003 WL 1922910, at *7-*8 (5th Cir. Mar. 24, 2003) (per curiam) (district court did not abuse its discretion in denying challenge for cause of juror who stated she was not sure whether she could not let her experience affect her impartiality, but stated she would try; in response to court's question of whether she could base her decision solely on the evidence heard in the courtroom, she replied, "Yes, I think I can"); *United States v. Thatcher*, 25 F.3d 1059, 1994 WL 251198, at *1 (10th Cir. June 10, 1994) (same; one juror stated he would maybe be a little in favor of law enforcement, but when court asked whether he thought he could be fair and impartial in judging the facts of the case he

responded, "Yes, I think so"; when court asked other juror whether his work with drug abuse patients would affect his ability to be fair, he responded, "I don't think it would affect that").[1]

Mr. Buehler testified that his father was in the Kansas state legislature for a number of years when tort reform was a big issue, so as his son Mr. Buehler heard a lot about that. The beliefs Mr. Buehler formed through his conversations with his father led him to believe that "part of our health care system is compromised by those circumstances." When counsel asked him if he could set aside his feelings and judge this case based on the evidence presented, he responded, "Yes." After some further discussion with counsel, the court then inquired whether Mr. Buehler believed he would be able to render a verdict that was based only on the evidence and the law after he heard the evidence, and Mr. Buehler responded, "I expect so." Mr. Buehler further testified that he recognizes that physicians make mistakes, that he believes if a physician makes a mistake and does not live up to the standard of care he should be held accountable for it, and that a person is entitled to be compensated for injuries resulting from a physician's failure to live up to the standard of care. As the court noted in response to plaintiff's challenge of Mr. Buehler for cause, Mr. Buehler's responses to the questions asked of him during voir dire satisfied the court that he would be able to be fair and impartial.

---

[1] The court is citing these two unpublished decisions for their persuasive value on a material issue in this case.

**IT IS THEREFORE ORDERED BY THE COURT** that plaintiff's Motion for New Trial (doc. #182) is denied.

**IT IS SO ORDERED** this 14th day of November, 2006.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge