IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**LARRY TREASTER,**

      **Plaintiff,**

      v.                                        **Case No. 05-2061-JWL**

**HEALTHSOUTH CORPORATION d/b/a
MID-AMERICA REHABILITATION
HOSPITAL and DANIEL R. WILSON, M.D.,**

      **Defendants.**

_____

**MEMORANDUM AND ORDER**

This is a medical negligence case arising from a fall plaintiff Larry Treaster suffered while he was a patient at defendant HealthSouth Corporation d/b/a Mid-America Rehabilitation Hospital ("the hospital"). Defendant Daniel R. Wilson, M.D., was plaintiff's treating physician as well as the hospital's medical director at the time of the fall. Plaintiff settled his claim against the hospital shortly before trial, then proceeded to trial on his claim against Dr. Wilson. The jury returned a verdict in favor of Dr. Wilson and the court entered judgment accordingly. This matter comes before the court on Plaintiff's Motion for Review of Taxation of Costs by Clerk (doc. # 189). In this motion, plaintiff asserts objections to specific costs taxed by the clerk and, additionally, asks the court to deny costs entirely due to plaintiff's indigency and the close and difficult nature of the case. For the reasons

explained below, the court will grant plaintiff's motion in part and reduce defendant Wilson's costs to $3,776.61.

## BACKGROUND

Plaintiff originally brought this lawsuit against the hospital, Dr. Wilson, his employer Rehabilitation Medicine, P.A., K. Dean Reeves, M.D., and Mohinder S. Pegany, M.D. Plaintiff subsequently dismissed his claims against Dr. Pegany, Dr. Reeves, and Rehabilitation Medicine. At the time the pretrial order was entered the only two remaining defendants were the hospital and Dr. Wilson. The case was set for jury trial beginning Tuesday, September 26, 2006. On the Friday prior, September 22, 2006, plaintiff and the hospital reached an agreement settling plaintiff's claim against the hospital. Thus, the posture of the case as it stood at the time of trial was that plaintiff claimed that defendant Wilson was negligent in failing to order adequate restraints to ensure that plaintiff was properly restrained to protect him from falling; defendant Wilson, in turn, denied that he was at fault and further asserted the hospital's comparative fault.

The case was tried to a jury beginning September 26, 2006. On October 5, 2006, the jury returned a verdict in defendant Wilson's favor, finding he was not at fault. The court entered judgment accordingly, stating that defendant Wilson should recover of plaintiff his costs of the action. After trial, defendant Wilson filed his bill of costs, seeking $8,906.19 as his costs of the action. On January 11, 2007, the clerk taxed costs against plaintiff in the amount of $7,538.47. Plaintiff then filed the current motion to retax costs, seeking this

2

court's review of the taxation of costs assessed by the clerk. In plaintiff's motion, plaintiff objects to certain specific items that the clerk taxed as costs. Additionally, plaintiff asks the court to deny costs entirely due to plaintiff's indigency and the close and difficult nature of the case.

On February 28, 2007, the court issued a Memorandum and Order directing the parties to submit supplemental briefs addressing the issue of plaintiff's indigency. Defendant Wilson then filed a motion seeking an order requiring plaintiff to disclose information relating to the financial aspects of plaintiff's eve-of-trial settlement with the hospital. The court granted the motion and directed plaintiff to produce that information in camera for the court's review. The court has now reviewed plaintiff's supplemental brief and the settlement information plaintiff submitted to the court for in camera inspection. The deadline for defendant Wilson to file a supplemental response brief has passed. The court has carefully reviewed the record and is now prepared to rule.

## DISCUSSION

Federal Rule of Civil Procedure 54(d) provides that "[e]xcept when express provision therefor is made in a statute of the United States or in these rules, costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs." This rule creates a presumption that the district court will award the prevailing party costs. *Rodriquez v. Whiting Farms, Inc.*, 360 F.3d 1180, 1190 (10th Cir. 2004). The denial of costs is in the nature of a severe penalty and there must be some apparent reason to penalize the

3

prevailing party if costs are to be denied. *Id.* The allowance or disallowance of costs to a prevailing party is within the sound discretion of this court, but this discretion is limited in two ways: first, as stated previously, Rule 54 creates a presumption that the district court will award costs to the prevailing party and, second, the court must provide a valid reason for not awarding costs to a prevailing party. *Cantrell v. Int'l Bhd. of Elec. Workers*, 69 F.3d 456, 458-59 (10th Cir. 1995) (en banc). The non-prevailing party has the burden to overcome the presumption in favor of awarding costs. *Rodriquez*, 360 F.3d at 1190.

Plaintiff contends that the court should deny costs entirely because of plaintiff's indigency and the close and difficult nature of the case. The Tenth Circuit has indeed suggested that these may serve as valid reasons for denying costs. *Cantrell*, 69 F.3d at 459 (noting that the Seventh Circuit has held that it is not an abuse of discretion for the district court to deny costs where the non-prevailing party is indigent and that the Sixth Circuit has held that a district court may deny a motion for costs if the issues are close and difficult); *see also Rodriquez*, 360 F.3d at 1190 (citing *Cantrell* for the proposition that other circuits have recognized that the indigent status of the non-prevailing party and the presentation of issues that are close and difficult are both circumstances in which a district court may deny costs).

Turning first to plaintiff's claim of indigency, this court follows the Tenth Circuit's lead that the indigency exception derives from case law from the Seventh Circuit, and the court looks to the law of the Seventh Circuit in evaluating plaintiff's claim of indigency. The Seventh Circuit has held that in denying costs based on this basis, the court should first "make a threshold factual finding that the losing party is incapable of paying the court-

4

imposed costs at this time or in the future." *Rivera v. City of Chicago*, 469 F.3d 631, 635 (7th Cir. 2006) (quotation omitted). The non-prevailing party has the burden of providing the court with sufficient documentation to support such a finding. *Id.* "This documentation should include evidence in the form of an affidavit or other documentary evidence of both income and assets, as well as a schedule of expenses." *Id.* "Second, the district court should consider the amount of costs, the good faith of the losing party, and the closeness and difficulty of the issues raised" in deciding whether to deny costs. *Id.* Again, the non-prevailing party has the burden to establish that he or she is entitled to the benefit of the indigency exception. *Id.*

**A.      Plaintiff's Ability to Pay Costs**

In this case, plaintiff has provided sufficient documentation to satisfy the court that he is incapable of paying court-imposed costs at this time or in the future. His income consists of worker's compensation and social security disability benefits in the amount of $1,780.92 per month. He has estimated his monthly expenses, which the court does not find to be unreasonable, to be $1,893. Thus, his monthly expenses exceed his monthly income. He has no savings or investments. He has a joint checking account with his wife and the average balance is normally around $500. It does not appear that plaintiff's dire financial circumstances are likely to improve in the future because he is permanently and totally disabled as a result of a work-related traumatic brain injury. In fact, it was during his hospitalized rehabilitation from that injury that he suffered the fall that was the subject of this lawsuit. Notwithstanding plaintiff's current financial circumstances, defendant contends that

5

plaintiff should be able to pay his costs from the money he received from his settlement with the hospital. The court has reviewed the information submitted by plaintiff in camera concerning the distribution of these settlement proceeds. Without divulging confidential information concerning the amount of the settlement, suffice it to say that those settlement proceeds are gone. They were used primarily to pay plaintiff's attorneys' fees and expenses. Plaintiff used the relatively modest amount that he received to pay down a balance on a credit card. During a telephone conference in this case, counsel for defendant Wilson suggested that those settlement funds should have been used to pay defendant Wilson's costs before being used for other purposes. Defendant Wilson has not, however, cited to the court any authority which would support the proposition that defendant Wilson had priority to those funds. Those settlement proceeds are indeed gone, and plaintiff has submitted evidence which establishes that he is incapable of paying court-imposed costs at this time or in the future. This threshold showing is all that is required to potentially invoke the indigency exception. Because plaintiff has made this threshold showing, then, the court must next consider the amount of costs, the good faith of plaintiff, and the closeness and difficulty of the issues raised in deciding whether to deny costs.

**B.     Amount of Costs**

The clerk taxed costs in the amount of $7,538.47. Plaintiff asks the court to reduce this amount to $3,038.48 by disallowing certain costs which, plaintiff contends, are not properly taxable. The costs allowed under Rule 54(d) is governed by 28 U.S.C. § 1920, which provides that the judge or the clerk may tax as costs certain enumerated categories of

expenses. § 1920. The court has no discretion to award items as costs that are not set forth in § 1920. *Bee v. Greaves*, 910 F.2d 686, 690 (10th Cir. 1990). The party seeking its costs has the burden of establishing the amount of compensable costs and expenses to which it is entitled. *Allison v. Bank One-Denver*, 289 F.3d 1223, 1248-49 (10th Cir. 2002). Following are the disputed items of costs.

*1. Service of Subpoena*

The clerk taxed service of a subpoena on Lynda Watson, R.N. in the amount of $125.10. The cost of service of a subpoena is statutorily recoverable as "[f]ees of the . . . marshal" under § 1920(1). *See Burton v. R.J. Reynolds Tobacco Co.*, 395 F. Supp. 2d 1065, 1078 (D. Kan. 2005). Although defendant Wilson used a private process server instead of the marshal, service fees to private process servers are generally taxable up to the amount that would have been incurred if the U.S. Marshal's office had effected service. *See id.* The cost for service by the marshal is $45 plus mileage at 44.5¢ per mile. The process server charged for 180 miles at 44.5¢ per mile, or $80.10. The clerk allowed $125.10, which is consistent with the amount that would have been incurred if the marshal had effected service ($45 + $80.10). Accordingly, the clerk properly taxed this item as costs.

Plaintiff further contends that this cost should not be allowed because Ms. Watson was never called as a witness at trial. Ms. Watson was an expert retained by plaintiff who was originally intended to offer her opinion that the nurses at the hospital did not meet the standard of care in preventing Mr. Treaster's fall. Once plaintiff settled his claims against the hospital, plaintiff no longer needed Ms. Watson to testify. Ms. Watson's testimony,

7

however, presumably still would have been helpful to defendant Wilson in supporting his comparative fault claim against the hospital. As such, defendant Wilson subpoenaed Ms. Watson as a trial witness. The court does not believe that the subpoena was unnecessary (so as to support the denial of this cost) just because defendant Wilson ultimately did not call Ms. Watson as a witness at trial. The mere fact that Ms. Watson was under subpoena undoubtedly served the deterrent purpose of discouraging counsel for plaintiff from offering evidence that the hospital was not at fault, which may have implicitly bolstered defendant Wilson's comparative fault claim against the hospital. Simply because counsel for defendant Wilson ultimately decided, as a matter of trial strategy, not to call Ms. Watson as a witness does not mean that the subpoena was unnecessary. The court therefore finds plaintiff's argument that the cost of Ms. Watson's subpoena was unnecessary to be without merit.

*2. Fees of the Court Reporter*

The clerk taxed fees of the court reporter in the amount of $4,903.24. Plaintiff contends that the court should disallow defendant the costs of ten different depositions. The court may tax as costs "[f]ees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case." § 1920(2). "The costs of taking and transcribing depositions reasonably necessary for litigation are generally awarded to the prevailing party under 28 U.S.C. § 1920." *Callicrate v. Farmland Indus., Inc.*, 139 F.3d 1336, 1339 (10th Cir. 1998). The court will allow as costs the cost of one transcript for each deposition only, but not items for the convenience of counsel such as minuscripts, keyword

8

indices, ASCII disks, exhibits, and postage and delivery.  *See Burton*, 395 F. Supp. 2d at 1080.

In this case, plaintiff urges the court to disallow the costs of ten deposition transcripts because the court reporter invoices give a total amount without detailing whether non-recoverable services were provided.  In response, defendant Wilson contends that the court should not deny these costs simply because they are not sufficiently detailed and, furthermore, he contends that the reporter service may not charge separately for items such as postage and copies, that those costs might be built into the overall fee, and that he should not be penalized for the reporter's business practices.  The court disagrees.  Court reporters' invoices for depositions are typically only partially recoverable as costs because they generally include numerous convenience items that are not allowable as costs.  It is well established that the party seeking its costs has the burden of establishing the amount of compensable costs and expenses to which it is entitled.  *Allison*, 289 F.3d at 1248-49.  Consequently, a party that intends to recover its costs if it prevails at trial should prudently require its vendors to present an itemized invoice so that the clerk and/or the court can distinguish between the amounts that are recoverable and those that are not.  Indeed, court reporter invoices are generally itemized in this fashion, as illustrated by the numerous other court reporter invoices submitted with defendant Wilson's bill of costs.

Defendant Wilson, then, has not met his burden of establishing that the following amounts consist of "[f]ees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case," § 1920(2), as opposed to being for related

convenience items that are not recoverable: depositions of Dr. Wilson ($420.90); Baindu Kamara, Inessa Sergeyeva, and Stacie Ann Blackwell ($569.90); Rugeania Coats and Teddy Reed Scott ($385.80); and Dawn Caprice Truelove and Lisa Lane ($364.90). Additionally, the invoice for the deposition of Lynda Watson, BSW ($586.73) states that it is for the original and one copy of the deposition and that the original costs have been split as requested; again, the extent to which this amount may reflect non-recoverable costs is unclear to the court. The court, however, rejects plaintiff's challenge to the deposition costs for Darla R. Ura. That invoice states that it is for one certified copy of her deposition transcript, an item which is properly taxable. Therefore, the court will not disallow this cost. The amounts taxed by the clerk as fees of the court reporter, then, should be reduced by $2,328.23 to a total of $2,575.01.

### *3. Printing and Copying Costs*

The clerk taxed fees for disbursements and printing in the amount of $1,599.71. The court may tax as costs "[f]ees and disbursements for printing and witnesses," § 1920(3), but the expenses claimed by defendant Wilson under this category of costs would be more appropriately categorized as costs under § 1920(4), which permits the court to tax as costs "fees for exemplification and copies of papers necessarily obtained for use in the case." A copy is "necessarily obtained" within the meaning of § 1920(4) only where the court believes that its procurement was reasonably necessary to the prevailing party's preparation of its case. *See Battenfield of Am. Holding Co. v. Baird, Kurtz & Dobson*, 196 F.R.D. 613, 617 (D.

Kan. 2000). Defendant Wilson, as the party seeking his costs, bears the burden of establishing that the copy costs satisfy this standard. *See id.*

The court finds that defendant Wilson has met his burden with respect to the copying of materials for Dr. Barrett ($55.77), the medical record trial exhibits ($83.54), and the copies from the 4/29/05 invoice from Xact ($33.27). He has not, however, met his burden of establishing that the following items are recoverable costs: the remainder of the 4/29/05 invoice from Xact ($11.82) and the invoice from Office Depot ($89.10) because binders are not "printing" or "copies" as allowed by § 1920(3) as well as the other invoice from Xact ($64.17) because the record does not disclose the nature of the materials copied and therefore defendant has not shown that these copies were reasonably necessary to preparation of his case. The expenses associated with blowing up and mounting trial exhibits also were not reasonably necessary in a trial courtroom equipped with an Elmo system, as was the case here. *See, e.g.*, *Battenfeld of Am. Holding Co.*, 196 F.R.D. at 616-17 (denying costs of board exhibits used at trial because, although they may have helped the jury understand the issues, the court could not conclude they were "necessarily obtained" for use in the case). Consequently, defendant Wilson also has not met his burden of establishing that the following items are recoverable costs: Kinkos ($251.43), Copy Center ($44.05), Kinkos ($74.14), RSI ($670), Kinkos ($222.42). The amount allowable by the clerk as "[f]ees for disbursements and printing" should therefore be reduced by $1,427.13 for a total of $172.58.

  4.  *Witness Fee*

11

The clerk taxed a witness fee for Sandra Barrett, M.D. in the amount of $236.12. "Fees and disbursements for . . . witnesses" are taxable as costs. § 1920(3). Expert witness fees are taxable under § 1920(3) only to the relatively modest extent allowed by 28 U.S.C. § 1821. *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 445 (1987); *Hull ex rel. Hull v. United States*, 978 F.2d 570, 572-73 (10th Cir. 1992) (district court erred in awarding expert witness fees in excess of those allowed by § 1821). "Section 1821 generally allows a $40 per day attendance fee plus travel and subsistence expenses related to attendance." *Burton*, 395 F. Supp. 2d at 1081.

Defendant Wilson is entitled to the following costs for Dr. Barrett's witness fee: $40 for attendance, § 1821(b); $185.12 (416 miles at 44.5¢ per mile) as a travel allowance, § 1821(c)(2); and $4.50 for toll charges, § 1821(c)(3). Defendant Wilson now admits that he is not entitled to the originally claimed $6.50 charge for meals because an overnight stay was not required for Dr. Barrett. *See* § 1821(d)(1) (subsistence allowance is to be paid only when an overnight stay is required). Thus, the amount allowable as costs for Dr. Barrett's witness fee must be reduced $6.50 to a total of $229.62.

5.   *Total Amount of Taxable Costs*

The total amount of costs properly taxable, then, is as follows:

```
Fees for service of summons and subpoena  . . . . . . .  $125.10
Fees of the court reporter . . . . . . . . . . . . . . . . . . . . . . 2,575.01
Fees and disbursements for printing  . . . . . . . . . . . . . . . . . . 0
Fees for witnesses  . . . . . . . . . . . . . . . . . . . . . . . . . . . . 229.62
Fees for exemplification and copies of papers  . . . .   846.88
Total . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $3,776.61
```

12

**C.    Good Faith of Plaintiff**

The Seventh Circuit has instructed that the losing party's good faith is one of the factors the court should consider in determining whether to deny costs under the indigency exception. *Rivera v. City of Chicago*, 469 F.3d 631, 635 (7th Cir. 2006). In determining the proper weight to be given to this consideration, the court is mindful that the losing party's good faith is alone insufficient to justify the denial of costs to the prevailing party. *AeroTech, Inc. v. Estes*, 110 F.3d 1523, 1527 (10th Cir. 1997). Perhaps it could be said more accurately that this consideration figures in the court's analysis in the sense that the losing party's good faith is an important factor because it should be a virtual prerequisite to receiving relief from the award of costs. *See Cherry v. Champion Int'l Corp.*, 186 F.3d 442, 446 (4th Cir. 1999).

In this case, the court readily concludes that plaintiff acted in good faith in bringing this lawsuit against Dr. Wilson and in prosecuting his claim against Dr. Wilson through trial. Plaintiff's claims against Dr. Wilson were certainly legitimate. The case did not present complex legal issues, but it was permeated with genuine issues of fact that required resolution by a fact finder. The court believes that plaintiff and his counsel were genuinely surprised by the jury's verdict. Although the jury ultimately resolved those issues in favor of Dr. Wilson, the evidence would have supported a jury verdict in favor of either party. Consequently, this is not a case in which the plaintiff's lack of good faith should preclude the court's denial of costs.

**D.    Closeness and Difficulty of the Issues Raised**

The fact that a case presents close and difficult questions can serve as a valid basis to deny costs. *Cantrell v. Int'l Bhd. of Elec. Workers*, 69 F.3d 456, 459 (10th Cir. 1995) (en banc). The court is not required to deny costs simply because a plaintiff is indigent and a case presents close and difficult questions. *Rodriquez v. Whiting Farms, Inc.*, 360 F.3d 1180, 1190 (10th Cir. 2004). But, this is one of the considerations that the court considers in its analysis under the indigency exception. *Rivera*, 469 F.3d at 635.

Here, the case presented close questions of fact as to whether the hospital's staff, Dr. Wilson, and/or Dr. Reeves was at fault in failing to properly restrain plaintiff. The issues were not particularly complex or difficult from a legal standpoint, but the evidence was rather complex and unusually lengthy from a factual standpoint. Ultimately, the court does not believe that this factor necessarily weighs in favor of or against the denial of costs.

**E.     Summary**

The court has carefully considered whether costs should be denied in this case. Ultimately, despite plaintiff's dire financial circumstances and the fact that plaintiff prosecuted his case against defendant Wilson in good faith, the court does not believe that defendant Wilson should be denied his costs because the Tenth Circuit has repeatedly stated that the denial of costs is in the nature of a severe penalty and that there must be some apparent reason to penalize the prevailing party if costs are to be denied. *See Rodriquez*, 360 F.3d at 1190; *AeroTech*, 110 F.3d at 1526-27; *Klein v. Grynberg*, 44 F.3d 1497, 1507 (10th Cir. 1995). The only reason the court can surmise for penalizing defendant Wilson in this manner would be the fact that he overstated his bill of costs. His original bill of costs sought

14

$8,906.19. The clerk reduced this $1,367.72 to $7,538.47 based on items that clearly were not taxable, including $1,276.20 in airfare for defendant Wilson's counsel. And, upon even closer scrutiny this court has determined that defendant Wilson is really only entitled to approximately half that amount. Thus, the amount properly taxable was only forty-two percent of the original amount defendant Wilson sought to tax plaintiff. The court believes, however, that this is attributable to nothing more than zealous advocacy. This case was aggressively litigated by both sets of attorneys, and plaintiff's counsel may have taken a similar approach to costs if plaintiff had prevailed at trial. Consequently, the court will not deny defendant his costs. The court will, however, reduce defendant Wilson's costs to those items which are properly taxable as set forth in the court's discussion above.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff's Motion for Review of Taxation of Costs by Clerk (doc. #189) is granted in part and denied in part. The court will not deny defendant Wilson his costs entirely, but will reduce his costs to $3,776.61.

**IT IS SO ORDERED** this 3rd day of April, 2007.

                                                    s/ John W. Lungstrum
                                                   John W. Lungstrum
                                                   United States District Judge